CYRUS J. S. SCOTT *v.* ROBERT MORSE AND TIMOTHY MORSE.

The plaintiff, March 9, 1846, bargained to purchase of the defendant a quantity of pine timber, then lying upon the bank of a river, and which the parties expected would be floated off by the overflow of the water that spring, at a specified price for each thousand feet,—the quantity to be ascertained by measurement to be made by certain persons agreed upon, and the plaintiff to furnish two steerage plank for each box which the timber should make, when rafted; and the plaintiff promised, that, so soon as the timber should be surveyed, he would deliver to the defendant " a promissory note of hand," signed by the plaintiff and one H., for the price of the timber and steerage plank, payable one half by the fifteenth of July, 1846, and the other half by the fifteenth of October, 1846, with interest after July 15, 1846, and to be made payable at some bank in Boston, if the defendant so desired; and it was also agreed, that, if the timber did not float, and the defendant could not put it fairly afloat, he should delay payment and interest, until he should put the timber afloat; and it was also agreed, that if any part of the timber could not, by reasonable expense, be put afloat that spring, the plaintiff should have the same time to pay for that portion, after it should be put afloat, as he was to have for that part rafted that spring, and that, if any part of the timber could not be floated in season to take to market so soon as the next autumn, on so much of said timber payment and interest should be delayed until July 15, 1847. The timber was not floated, so that it could be taken to market in 1846. And it was held, that the plaintiff was bound, by the agreement, when the price of the timber was ascertained by measurement, to execute and deliver to the defendant an absolute, negotiable note for the price of the timber, payable one half July 15, 1846, and the residue October 15, 1846, with interest after July 15, 1846, without stating therein any of the conditions, in *reference to the* payment, which were embraced within the original agreement.

TROVER for a quantity of round pine timber. Plea, the general issue, and trial by jury, June Term, 1849,—REDFIELD, J., presiding.

The timber sued for was originally the property of the defendant Robert Morse, and was bargained to the plaintiff by the defendant Timothy Morse, as the agent of Robert Morse, by a written agreement, which was in these words.

" This contract, made this ninth day of March, 1846, by and be-
' tween Robert Morse of Rumsey in the county of Grafton and
' state of New Hampshire, by the said Robert Morse's agent, Tim-
' othy Morse, of the first part, and C. J. S. Scott, of the state of
' Vermont, of the second part, witnesseth;—That the said Robert

Scott *v.* Morse et al.

' Morse has this day sold to the said Scott all of his the said Robert
' Morse's pine lumber, now lying on his the said Robert Morse's
' brook meadow in said Newbury, and also two steerage plank for
' each and every box said timber shall make, after rafted; and also
' hereby agrees to furnish said Scott a suitable quantity of pine tim-
' ber and steerage beams, of a good quality, delivered on said land-
' ing, with which to raft said timber; said pine timber and steerage
' beams to be free of expense to said Scott. And the said Morse
' farther agrees, that in case all of said timber is not floated by the
' rise of the river, to put such timber, as does not float, fairly afloat;
' or in case said Morse cannot put said timber afloat, he is to delay
' payment and interest, until he does put said timber afloat. And
' the said Cyrus J. S. Scott hereby promises, so soon as said timber
' is surveyed, to furnish said Morse a promissory note of hand,
' signed by him, the said Scott, and Samuel Hutchins of said New-
' bury, for the amount said timber and steerage plank shall come to,
' at eight dollars per thousand feet, payable one half by the fifteenth
' day of July next, and the other half by the fifteenth day of Octo-
' ber next, with interest after the fifteenth day of July next,—said
' notes to be payable at some bank in Boston, if the said Morse de-
' sires. It is farther agreed by the parties to this instrument, that
' Hosea S. Baker of Haverhill, N. H., and Horace Duncan of Ly-
' man, shall survey said timber, unless the parties shall hereafter
' agree upon some other person, or persons, to do so. It is under-
' stood, that on such timber as is defective a suitable deduction is to
' be made, so as to make said timber equal to merchantable timber;
' and it is farther understood and agreed by the parties, that if there
' is any part of said timber, that cannot by reasonable expense be
' put afloat the present spring, the said Scott is to have the same
' time to pay for said timber, after it is put afloat, as he does for that
' part, which is rafted this spring, and no longer; provided farther,
' that if any part of said timber cannot be floated in season to take
' to market as soon as next fall, on so much of said timber payment
' and interest is to be delayed, until the fifteenth of July, 1847.
' And the said Morse farther agrees to furnish the said Scott, free
' of expense, a good experienced man two weeks, to trim, peal and
' prepare said timber for rafting. Signed, sealed and delivered the
' day and year first above written.

(Signed)    C. J. S. SCOTT,              [Seal.]
            TIMO. MORSE, for ROB'T MORSE."   [Seal.]

The timber was surveyed and the price ascertained about the
fourth of April, 1846; but the timber did not float, so that it could
all be taken to market in 1846. The plaintiff was applied to by
Timothy Morse for the notes pursuant to the contract, in the spring
of 1846, after the price had been ascertained, and he offered, in due
season, so far as it appeared, to give to Morse notes for the price,

signed as required by the contract, which should specify the conditions of payment, as stated in the contract; but Morse refused to receive such notes, and claimed, that he was entitled to absolute, negotiable notes, payable in Boston. The plaintiff offered to give such a note, as Morse required, for that portion of the timber which was afloat in the spring of 1846; but *Morse declined to receive* any note, unless he could have the *whole* price. In the spring of 1847, when the residue of the timber floated, the defendants took it to market and sold it ;—for which this action was brought.

The court decided, that, by the terms of the contract, the plaintiff was not bound to give an absolute or negotiable promissory note for the price of the timber, but only a note expressed to be payable in the manner and upon the conditions named in the contract; and that, if he offered a negotiable promissory note for so much of the timber, as was floated in 1846, and a note of the same tenor for the residue, but payable the next year, in the manner and at the time specified in the contract, with such surety as the contract required, and *in the time therein specified, it was, in this respect, a compliance* with the contract on his part.

A verdict was taken for the plaintiff, for the difference between the contract price of the timber and the value of the timber in 1847, which was the time of conversion. Exceptions by defendants.

*Parker, Peck & Colby* and *Tracy, Converse & Barrett* for defendants.

In the sale of personal property, when any thing remains to be done, before the sale can be considered as complete,—whether to be done by the vendee or the vendor,—as between the parties the right of property does not pass. Chit. on Cont. 376. *Ward* v. *Shaw,* 7 Wend. 404. The defendants had the right to retain the logs until payment of the price, according to the contract; and the non-performance of the plaintiff, in that respect, entitled the vendor to dissolve the contract. Chit. on Cont. 427. The plaintiff failed to perform the conditions of the contract; he agreed to deliver to the defendant a " promissory note of hand," as soon as the timber was surveyed. The writing offered was a mere simple contract. A "promissory note," or "note of hand," is a written promise for the payment of money absolutely and at all events, at a time therein

limited, or on demand, to a person therein named, or his order, or to bearer. Bayl. on Bills 1. 3 Kent 73. Chit. on Bills 331. The statute of 7 Anne c. 7 recognizes only such notes, as are payable " to some person, or order, or bearer." Chit. on Bills 333. The county court held the plaintiff bound only to give a *conditional note, not negotiable.* But the contract excludes such a construction by distinctly describing the note to be given,—1. A promissory note of hand ;—2. Signed by Scott and Samuel Hutchins ;—3. Payable *one half* July 15th and one half October 15th ;—4. At some bank in Boston, if desired by the defendants ;—5. With interest after July 15th. The parties could not have intended, that the note should have reference to the floating of the logs ; for the note was to be delivered as soon as the timber was surveyed, and, of necessity, before any was floated. The stipulations in relation to delay of payment were covenants by Morse, and pre-supposed a note to have been given, on which payment was to be delayed. By the very terms of the writing the whole note might have become collectable in July and October, 1846, and yet, by the charge of the court, the various conditions would still have been engrafted on the note, as that was to be delivered, before the result was known. This would be a mere renewal of the contract, with a surety.

*A. Underwood* and *Hebard & Martin* for plaintiff.

It is evident from the whole contract, that two prominent points were contemplated by the parties,—first, that the lumber would probably be afloat by the rise of the river in the spring of 1846,— which would entitle Morse to notes payable by the times specified in the contract, with interest from the following July,—second, that the time of payment and for interest to commence would be governed by the event of the lumber floating and consequent time of its arrival in market. The court will so construe the contract, as to carry out the meaning of the parties, as gathered from the whole contract. How could the matter of the commencement of interest and payment of the notes, which were to depend on the floating of the lumber, be made sure, otherwise than by making the floating of the lumber a condition in the notes, on which they were to depend. If the notes were unconditional, and the day of payment fixed, the plaintiff could not control the payment, whether the lumber floated,

or not. By the contract Morse could put the timber afloat in the spring of 1846, and in that event he might call, perhaps, for absolute notes. But he protects himself from the necessity of putting it afloat, as it might occasion great expense; and while he does not absolutely bind himself to put the lumber afloat, it would be a manifestly erroneous view of the case, to say that Scott must give absolute notes, which he would be bound to pay at maturity, whether the lumber were floated, or put afloat, in one, two, or three years, or never. Again, Morse was to furnish the steerage plank for each box the timber should make, *after rafted,* and the note, or notes, were to cover the steerage plank as well as other lumber. Hence, as the rafting of the boxes could not be done, until the lumber was *afloat,* the amount of steerage plank, which the notes were to cover, could not all be ascertained, until the lumber was afloat. From this it would seem, that it could not have been contemplated to give at least absolute notes, until the lumber was all afloat, or rafted, or only on such portion, as should be rafted, or afloat, ready for market; or, if absolute notes were to be given, it was upon the ground, that all the lumber was expected to be afloat in the spring, or that Morse should put it afloat. But as Scott was to furnish a note, as soon as the lumber was surveyed, it may be well supposed, a note was to be given for the whole lumber, and, as payment and interest were to depend on its floating, which would be subsequent to the survey, this payment and interest could be controlled in no other way, than by making the floating of the lumber a condition in the note, on which they are to depend. *Hinsdale* v. *Partridge,* 14 Vt. 547. *Morey* v. *Homan,* 10 Vt. 565. *Adm'r of Wheelock* v. *Clark et al.,* 11 Vt. 583. *Isaacs* v. *Elkins,* 11 Vt. 679. *Hatch* v. *Hyde,* 14 Vt. 25.

The opinion of the court was delivered by

POLAND, J. The plaintiff admits, that he was bound to deliver, or offer to deliver, to the defendant, Robert Morse, or Timothy Morse, his agent, a note for the amount of the price of the timber according to the terms of their written contract of the ninth of March, 1846, before the defendants were bound to deliver the timber to him, and that he cannot maintain this suit, without such performance, or offer of performance, by himself;—and the only ques-

tion presented by this case is, whether this was done.    This depends entirely upon what is to be deemed the true effect and construction of the aforesaid written contract.

The contract on the part of the plaintiff is in the following words;—" And the said Cyrus J. S. Scott, hereby promises, so soon " as said timber is surveyed, to furnish said Morse a promissory " note of hand, signed by him the said Scott and Samuel Hutch- " ins of said Newbury, for the amount said timber and steerage " plank shall come to at eight dollars per thousand feet, payable one " half by the 15th day of July next and the other half by the 15th " day of October next, with interest after the 15th day of July " next,—said notes to be payable at some bank in Boston, if the " said Morse desires it."    This stipulation of the plaintiff is in clear and distinct language, and leaves no room for dispute as to its import, or requirements ; but it is insisted, that other portions of the contract should have the effect to govern and control this, so as to vary and alter its terms,—and doubtless the whole contract should be considered together, and all its provisions be made to harmonize, if possible.

The plaintiff relies upon the following clause of the contract, which precedes the one copied above, viz.,  " And the said Morse " farther agrees, that in case said timber is not floated by the rise " of the river, to put such timber, as does not float, fairly afloat, or, " in case said Morse cannot put said timber afloat, he is to delay " payment and interest, until he does put said timber afloat;"   and also upon the following stipulation in the contract, after his covenant above recited, to wit,  " And it is farther understood and agreed " by the parties, that if there is any part of said timber, that cannot " by reasonable expense be put afloat the present spring, the said " Scott is to have the same time to pay for said timber, after it is " put afloat, as he does for that part which is rafted this spring, and " no longer ; provided farther, that if any part of said timber cannot " be floated in season to take to market as soon as next fall, on so " much of said timber payment and interest is to be delayed until " the fifteeenth of July, 1847."

In cases where contradictory provisions are found in the same contract, they are all to be viewed together, and to be interpreted by that fundamental rule of construction, the apparent intention of

the parties; but before any one clearly expressed provision of a contract is to be entirely thrown aside, as repugnant to others in the same contract, courts seek with great diligence and care for a construction, which will give effect to all. In this case the defendants claim, that the plaintiff was bound to give, or offer to give, a note, according to the stipulation on his part. The plaintiff insists, he was not bound to execute, or offer to execute, such a note, but only a note, or notes, in which all the above conditions and stipulations should be expressed; and he made his offer accordingly. We have carefully examined all the provisions contained in the written contract of the parties, and are clearly and unanimously of opinion, that the plaintiff's construction of the contract, in relation to the notes to be given for the price of the lumber, cannot be supported, and I will briefly state some of the reasons, which have induced this conclusion.

The stipulation of the plaintiff, as to the note he was to give, is clear and explicit, involving no doubt or uncertainty whatever in its terms; and we cannot easily be induced to suppose, that the parties used such unequivocal language, without understanding and intending that force and effect should be given to it. Neither are we able to perceive, that the stipulations on the part of Morse at all conflict with those of the plaintiff, so that full effect cannot be given to all the terms of the contract, and all stand together; indeed, it appears to us, that the language of Morse's part of the contract is more consistent with our view of the other part of the contract, than that which the plaintiff claims. The plaintiff was " to furnish a promissory note of hand, so soon as the timber was surveyed." It is to be inferred from the contract, (and it is so treated by the plaintiff's counsel in argument,) that this was to be done, before any portion of the timber would be floated, and before it could be known by the parties, whether any part, or, if any, how much, of said timber would be floated that spring, or even during that season; and of course, by the plaintiff's construction, it was entirely uncertain, when or how he was to pay for the timber, and his note must be equally indefinite and general.

A promissory note is said by Mr. Chitty " to be a promise, or engagement, in writing, to pay a specified sum at a time therein limited, or on demand, or at sight, to a person therein named, or

his order, or to the bearer." Chitty on Bills 516. And this definition, we apprehend, well expresses the popular and general idea of a *promissory note*. But it is very apparent, that, by the plaintiff's construction of this contract, his note, which he was to give, and which he offered, was of an entirely different character, and in no sense answered to the legal or popular definition of a promissory note.

The plaintiff also agreed, to make his note " payable at some bank in Boston, if Morse desired it." The evident intention of the parties by this provision was, to enable Morse to negotiate the note and anticipate the money for his timber, and, of course, it tends strongly to the belief, that the parties contemplated not only a note legally *negotiable*, but an absolute note, such as would be discounted by a city bank. But it is not to be supposed, that these parties, who were business men and acquainted with the course of mercantile transactions, could have believed, that such a note as the plaintiff offered would have been of any avail to Morse for that purpose.

As before stated, we think this view not at all in conflict with the other provisions of the contract, on the part of Morse. The parties evidently supposed, that the timber probably would all be floated and sent to market that spring, and provided for the giving of a note accordingly ; still, there was a contingency about it, which the plaintiff wished to guard himself against, and therefore required a stipulation from Morse, that, in case the lumber was not floated that spring, he would " *delay payment and interest*" on so much as did not float. These terms, as it seems to us, would not have been used, if Morse had not the power to call for and enforce payment ; and if the note were to be such as the plaintiff claims, there was no necessity for any such provision. On the other hand, if Morse held the plaintiff's note, which he might enforce against him and compel payment of the money, the plaintiff then needed such a provision for his own protection, and it was exceedingly natural, that he should require such an agreement from Morse.

It is urged, however, by the plaintiff's counsel, that if Morse negotiated the note, as contemplated, the plaintiff might be compelled to pay it, and his only remedy would be by a suit against Morse, upon the agreement to delay, and that the plaintiff would not have what Morse contracted he should have, *delay*, but only damages for

breach of the agreement, which might not compensate him.   We can see no greater force in this objection, than arises in every other case of contract between parties, if either refuses to perform what he agreed to do; the only remedy is in damages for non-performance, which frequently fail to make full compensation to the party injured.   What Morse contracted to do, in case the timber was not all floated, was certainly a thing within his power to perform, even if he negotiated the plaintiff's note; and it is not to be assumed, that he would not have performed it, as he agreed; and whether the contract was such as the plaintiff ought to have relied upon for his security is not for us to determine; it is sufficient to say, that it seems to have been all that he required, when he made his contract.

That these stipulations were to be independent of each other is apparent from the manner, in which the contract is drawn; for if the parties had intended the note to be conditional, and to include the contract on the part of Morse for delay in the payment, the plain and natural course would have been, to provide for such a note to be given, and then the other portions of the contract would have been wholly unnecessary.

In our view the county court erred in the construction of the contract, and their judgment is reversed and a new trial granted.